**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HOWARD JOHNSON COMPANY, Respondent.**

**No. 17039.**

United States Court of Appeals Third Circuit.

Argued June 18, 1968.

Decided July 26, 1968.

Mitchell Strickler, N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Hans J. Lehmann, Attys., N. L. R. B., on the brief, for petitioner.

Earl W. DeHart, Fortas & DeHart, Memphis, Tenn., for respondent.

Before KALODNER and VAN DUSEN, Circuit Judges, and WRIGHT, District Judge.

VAN DUSEN, Circuit Judge.

The N. L. R. B. petition before this court seeks enforcement of an order directing the respondent, Howard Johnson Company (employer), to cease and desist

from refusing to bargain collectively with International Operating Engineers Union, Local 68 (Union),[1] and to bargain collectively with the Union, together with the posting of notices, etc. (164 N. L. R. B. No. 121). The Board's Decision and Order affirms in full and adopts the Trial Examiner's Decision in an unfair labor practice case that charged the employer with violating § 8(a) (1) and (a) (5) of the NLRA [29 U.S.C. § 158(a) (1) and (a) (5)]. The employer deliberately committed the "technical" bargaining violation in order to contest the validity of a certification of the Union as the exclusive representative of the employer's "boiler and compressor room operating engineers employed at the Employer's Englewood, New Jersey plant, excluding * * * supervisors as defined in the Act." (8a)

Howard Johnson Company manufactures and distributes ice cream products at its Englewood plant, together with the storage and shipping of certain other products used in its restaurant business. On March 10, 1965, a Teamsters' Local lost a consent election held for all production and maintenance employees in the "ice cream" part of the employer's operation. Approximately 15 shipping employees who handled the other products were excluded by consent from the "unit" the Teamsters sought to represent.

Within the production and maintenance unit, two employees spent 25% of their time operating and maintaining certain "boiler" and compression equipment separated from the rest of the plant by a fire wall. The State of New Jersey required that these two employees, Koehler and Vary, be licensed to operate such equipment and the two employees, in performing their jobs, worked somewhat different hours than the approximately 21 other employees working on the production of ice cream products. Their maintenance chores, for which they were licensed, differed to some degree from other types of maintenance in the plant.

Approximately a year after the consent election, I. U. O. E. Local 68 sought to represent Koehler and Vary, and on April 29, 1966, petitioned the Board to direct an election pursuant to § 9(c) of the Act [29 U.S.C. § 159(c)]. On May 18, 1966, the Regional Director's Hearing Officer conducted a hearing, at which time employer argued strenuously that employees Koehler and Vary did not constitute a distinct unit for purposes of collective bargaining and that they had far too many common interests with the entire, integrated ice cream production operation to be appropriately designated a separate unit under § 9(b) of the Act [29 U.S.C. § 159(b)].[2] Testimony to support this contention was presented, the employer pointing to com-

1. It is recognized that Local 68 involved in this case does not have the same leadership as Local 825, which has been responsible for so much litigation both in the United States District Court for the District of New Jersey and this court. See, for example, Local 825, Int'l Union of Operating Engineers, 138 N.L.R.B. 279 (1962), enforced N. L. R. B. v. Local 825, Int'l Union of Operating Engineers, 322 F.2d 478 (3rd Cir. 1963); Cuneo for and on Behalf of N. L. R. B. v. Local No. 825, Internat'l Union of Operating Eng., 300 F.2d 832 (3rd Cir. 1962); and see, also, In re Local Union 825, International Union of Operating Engineers, AFL–CIO and Peter W. Weber, 50 L.C. ¶ 19,257, 57 L.R.R.M. 2143 (1964), adjudging respondents in criminal contempt for refusing to comply with the Board order enforced in N. L.

R. B. v. Local 825, Internat'l U. of Operating Engineers, 326 F.2d 213 (3rd Cir. 1964). It is noted that the respondent in some of the above-cited cases, Peter W. Weber, is the business manager of Local 825 and not an official of Local 68. However, he is at this time a vice president of the International, I. U. O. E.

2. I. U. O. E. Local 68 indicated that it did not want to represent a unit larger than employees Koehler and Vary. Such extremely small units are apparently sought frequently by the I. U. O. E., see, e. g., The Celotex Corporation, 105 N.L. R.B. 815 (1953), 3-man unit; Hawley & Hoops, Inc., 115 N.L.R.B. 1276 (1956), 4-man unit; Minnesota Mining & Manufacturing Company, 129 N.L. R.B. 789 (1960), 4-man unit.

mon supervision, common wage system and fringe benefits, and performance of maintenance and other chores outside the boiler and compressor area for roughly 75% of Koehler and Vary's time, as reasons, among others, why the unit requested was not appropriate. On June 9, 1966, the Regional Director filed his Decision and Direction of Election, finding that, despite the employer's contentions, the record failed to establish that the licensed engineers' maintenance work was so integrated with the production work that it lost its identity as a separate function.[3] The two engineers were found functionally homogeneous and employees of a type found by the Board in the past to be entitled to separate representation.[4]

On June 14, 1966, the employer complied with the direction of election by filing the required "election eligibility list" containing the names and addresses of Koehler and Vary.[5] On June 20, 1966, however, the company requested Board review of the Regional Director's decision, which request the Board denied in a telegram of July 1, 1966. The election was held accordingly on July 6 and the company immediately challenged both ballots. Briefly stated, the employer contended that Koehler was a "supervisor" as defined in § 2(11) of the Act[6] and

that Vary consequently was an inappropriate one-man unit.

The Regional Director, in his Supplemental Decision and Order of August 1, 1966, stated that he caused an investigation to be made pursuant to § 102.69 of the Board's Rules and Regulations [29 C.F.R. § 102.69] but that he rejected the employer's challenges on the ground that they constituted arguments reasonably available at the original hearing and that the Board had held that such dilatory arguments in the form of challenges could not serve to reopen the record.[7] On August 10, 1966, the respondent filed a request for review with the Board, setting forth in detail the arguments concerning Koehler's status as a § 2(11) supervisor, together with supporting allegations of fact. Among the many grounds advanced, the employer pointed to the requirement of the New Jersey licensing statute that Vary be supervised by Koehler in operating the plant's large compressor, to Koehler's use of independent judgment and authority to pledge credit of the employer in excess of $5000. in purchasing materials, and to Koehler's direction and evaluation of Vary's maintenance work, including the approving of overtime. By a telegram of October 27, 1966, the Board denied the respondent's request for review

---

3. The Board rationale is apparently based on a "functional" distinction, not that the I. U. O. E. represents a separate "craft." E. g., Whippany Paper Board Company, Inc., 119 N.L.R.B. 1615 (1958), involving the same Local 68.

4. See New England Confectionery Company, 108 N.L.R.B. 728 (1954), and cases cited supra, notes 2 and 3.

5. This requirement, pursuant to Excelsior Underwear Inc., 156 N.L.R.B. 1236 (1966), although not attacked by respondent in this case, has recently been questioned on procedural grounds. Wyman-Gordon Co. v. N. L. R. B., 397 F.2d 394 (1st Cir. 6/12/68). While it is unnecessary for this court to rule on the problem in this case, we do not find that submitting the list as required by the challenged decision of the Regional Di-

rector estopped the respondent from challenging Koehler's status.

6. 29 U.S.C. § 152(11) reads as follows:
"(11) The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

7. The authorities cited were Bon Marche, 118 N.L.R.B. 1621 (1957); Stokely-Bordo, 121 N.L.R.B. 937 (1958); and Rockwell Manufacturing Company, 122 N.L.R.B. 798 (1958).

and the election results were certified by an order of November 10, 1966.

The respondent's refusal to bargain with the Union resulted in the Union's quickly filing unfair labor practice charges on December 7, 1966. The Trial Examiner granted the General Counsel's motion for summary judgment, rejecting the employer's arguments concerning Koehler's "supervisor" status as an attempt to relitigate, contrary to Board Rule 102.67(f) [29 C.F.R. § 102.67(f)] and Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 162, 61 S.Ct. 908, 85 L.Ed. 1251 (1941). The respondent's exceptions to the Trial Examiner's decision were rejected by the Board on May 22, 1967, which Decision and Order adopted the Trial Examiner's rulings, findings, conclusions and recommendations. The Board added in a footnote its arguments and conclusion that Koehler's supervisory status had been fully litigated in the hearing held in the representation proceedings. Two motions for reconsideration were subsequently denied by the Board.[8]

In resisting enforcement, the respondent makes two types of arguments. It contends on the "merits" that a two-man unit is not appropriate in this instance and that, even if it were, "on the merits" Koehler is a statutory "supervisor" under § 2(11) of the Act. In addition, it contends that the Board has unfairly adopted a new procedure in this case by refusing at any stage of the proceedings, either in the representation proceeding or in the unfair labor practice proceeding, either to grant a hearing on the supervisor question or otherwise to make a "merits" determination of Koehler's status.

■ Taking these arguments in turn, we must reject the respondent's first contention concerning the merits of the two-man unit determination, since it is clear that the Board is given wide discretion in determining "appropriate" bargaining units under § 9(b) of the Act. See, e. g., N. L. R. B. v. Dee's of New Jersey, Inc., 395 F.2d 112 (3rd Cir. 5/20/68). Even though an appellate court may be suspicious of a unit justified, as in this case, by factual distinctions which do not persuasively delineate a unit with homogeneous and distinct interests clearly warranting separate bargaining representation in a small plant, more than one appropriate unit may be present in a given case and the Board's expert judgment can be upset only upon a showing that the determination was improperly controlled [under § 9(c) (5)] by the extent of organization. See, e. g., N. L. R. B. v. Western and Southern Life Insurance Company, 391 F.2d 119 (3rd Cir. 1968).[9] Applying such standards to this case, we find that "substantial evidence" supports the Board's determination that a two-man unit is appropriate in this case. And see American Potash & Chemical Corporation, 107 N.L.R.B. 1418 (1954), for a full statement of the Board's rationale in separating operating engineers as functionally distinct units.

■ The respondent's second contention, however, that Koehler is a "supervisor" under § 2(11) appears on the present record to have substantially more merit. While the Board's expert judgment on this question has not yet been given, except in a tangentially responsive footnote, taking the respondent's allegations as true, the employer has a strong case that Koehler is a supervisor.

---

**8.** The first motion, filed June 21, 1967, challenged the Board's footnote conclusion that Koehler's § 2(11) status had been "fully litigated" in the representation proceeding. The motion was denied June 26, 1967. The second motion, filed August 24, 1967, cited John R. Crocker Co., 166 N.L.R.B. No. 100 (July 27, 1967) (see footnote 21, infra), as clear authority that the employer was entitled

to raise Koehler's "supervisor" status on the merits by challenging his ballot.

**9.** Such suspicions cannot justify appellate reversal of Board unit determinations, and if § 9(c) (5) provides an inadequate standard for appellate review of unit determination, the statute should be amended by Congress.

Section 2(11) lists criteria in the disjunctive and the presence of any one would make Koehler a statutory "supervisor." E. g., Warner Company v. N. L. R. B., 365 F.2d 435, 437 (3rd Cir. 1966). In addition to the allegations that Koehler assigned and directed work,[10] that he had authority to pledge respondent's credit in the purchase of material,[11] and that he assigned and approved overtime,[12] the requirement of the State of New Jersey that Koehler supervise Vary with respect to one compressor seems particularly relevant.[13] While the requirements of state or other federal laws are admittedly not necessarily binding on the N. L. R. B. in making statutory determinations under the Act,[14] it seems anomalous that in this case, in order to find a two-man unit, the Board relies heavily on Koehler and Vary being licensed by New Jersey, and yet at the same time, in response to other statutory considerations, the contents and regulations of those licenses are ignored. We need not, however, and in proper exercise of our appellate function should not, here decide the merits of respondent's contentions on Koehler's § 2(11) "supervisor" status. The substantiality of respondent's contentions, however, assumed at this point to be based on provable facts, is relevant to a proper disposition of the arguments concerning the Board's procedures in this case.

The respondent contends that it has been the victim of a brand new Board procedure. Conceding the appropriateness of the longstanding Board Rule 102.67(f) that matters finally determined in the representation proceeding may not be relitigated in a related subsequent unfair labor practice proceeding,[15] the respondent contends that a form of this rule was applied within the representation proceeding itself to preclude any consideration on the merits of its § 2(11) contentions on the grounds that it constituted attempted "relitigation." Specifically citing Rule 102.69(c), which governs the representation proceeding, respondent insists that the Regional Director contravened the Rule by refusing either to have a hearing or to decide on the merits the challenge to Koehler's ballot on the ground that he was a supervisor.

"(c) If * * * challenged ballots are sufficient in number to affect the result of the election, the regional director *shall* investigate such * * challenges * * *. [S]uch action by the regional director may be on the basis of an administrative inappropriate action *or* * * * on the basis of a hearing * * *." 29 C.F.R. § 102.69(c) [Emphasis added.]

Although the Regional Director's Supplemental Decision and Order recited that it was "pursuant to Section 102.69" and that an "investigation" had been made, respondent contends that the Regional Director in fact failed to follow the Rule when he simply ruled that the employer could not raise the "supervisor" issue if it had not been presented at the earlier hearing or was not based on newly discovered evidence.

10. E. g., Farmer's Co-operative Gin Assn., 161 N.L.R.B. 887, 890–91 (1966), three-man maintenance "team"; Big Y Supermarkets, 161 N.L.R.B. 1263, 1268 (1966).

11. E. g., Brotherhood of Locomotive Firemen & Enginemen, 145 N.L.R.B. 1521, 1535–36 (1964).

12. E. g., Lender's Bagel Bakery, 158 N.L. R.B. 1175, 1181 (1966).

13. Vary's "C" Grade License meant that he could act as an operating engineer on one of the employer's compressors only "under the supervision of a properly licensed chief engineer" under penalty of fine. See respondent's Exhibit P–1 in the representation proceeding, ¶ 30, p. 11, ¶ 45, p. 14, and N.J.R.S. 34:7–6.

14. See, e. g., Division 1287 of Amalgamated Ass'n of St., Elec. Ry., etc. v. Missouri, 374 U.S. 74, 83 S.Ct. 1657, 10 L. Ed.2d 763 (1963), suggesting that the rationale is the supremacy clause of the Constitution.

15. See Pittsburgh Plate Glass Co. v. National Labor Relations Board, supra.

The Board in answer contends that the employer should not be allowed to delay the certification process by withholding crucial arguments at a unit or pre-election hearing and then presenting them after the balloting. In addition, they insist that the "merits" determination that a two-man unit was appropriate necessarily involved full litigation of the "supervisor" question. The employer knew that the presence of a supervisor would be fatal to such a unit, and in contending for a larger unit, the employer had introduced considerable evidence that Koehler and Vary were indistinguishable from the other employees and subject to supervision by the same plant manager.

■ Our examination of the record convinces us that the Board's position cannot prevail on this point. The possible status of Koehler as a statutory supervisor under § 2(11) was not "fully litigated" at the election hearing as the Board's footnote contends.[16] The entire thrust of that hearing was focused on other issues, issues related to the "integration" of respondent's production process, and the Board cannot carry its argument for full prior "litigation" by later culling the record for testimony that might now bear on the "supervisor" question. Evidence introduced at the hearing of common supervision by the plant manager does not preclude the presence of others with supervisor status under him.[17] Nothing in the Board rules

suggests that raising the § 2(11) issue in the form of a challenge to a ballot was not "timely" within the representation proceeding,[18] and it is evident that there was never a hearing on the issue or an investigation sufficient to allow a "merits" decision, reached after consideration of all of respondent's proffered evidence. If the opportunity for delay by a party, in this case an employer, is so substantial, the Board should amend its rules. Presumably, however, the discretion placed in the Regional Director as to whether to proceed by "investigation" or "hearing" takes care of the problem of delay. But such discretion does not allow the Regional Director to avoid deciding the issue altogether.

As we noted in N. L. R. B. v. Sun Drug Co., 359 F.2d 408, 414 (3rd Cir. 1966), parties can be denied a hearing when the Regional Director or the Board either assumes the facts alleged are true and decides on that basis, or they conclude that the alleged facts are legally irrelevant.[19] The respondent's contentions concerning Koehler were not disposed of by the Board or Regional Director on either of these two bases.

The Board argues that its decision in Cruis Along Boats, Inc., 128 N.L.R.B. 1019 (1960), provides an exception applicable in this case and suggests that the opinion gave the employer ample notice that he might be prevented from raising on a challenged ballot issues determined at the election hearing. Our

16. For this reason, the three cases cited by the Regional Director as authority for preventing "relitigation" within the representation proceeding itself are inapposite. See note 7, supra. In all three cases, the challenging party had the opportunity to present evidence on an issue clearly and explicitly raised at the original representation hearing and considered by the hearing officer.

17. For instance, within the respondent's plant, the shipping and other employees not connected with ice cream production had their own supervisor under the plant manager. See, also, North American Aviation, Inc., 115 N.L.R.B. 1090, 1093, n. 9 (1956), where it appears the Board

might have raised on its own initiative the problem of a supervisor within a unit of operating engineers.

18. The decision in Labor Board v. A. J. Tower Co., 329 U.S. 324, 332–333, 67 S.Ct. 324, 91 L.Ed. 322 (1946), decided under the Board's earlier Rules and Regulations, does not suggest that respondent's challenge was here untimely. *Tower Co.* only approved the Board's denial of post-election challenges occurring days after the votes had been counted and the "tally" signed by the challenging party.

19. See, also, N. L. R. B. v. Air Control Products of St. Petersburg, Inc., 335 F. 2d 245, 249–250 (5th Cir. 1964).

examination of the *Cruis Along Boats* decision, however, convinces us that it does not govern this case. We note particularly that there the Regional Director conducted an investigation of the challenged ballots and found nine to be supervisors, that the Board admitted that substantial questions of the supervisor's status existed and a further hearing would be required normally, but that the Board held the parties to a pre-election stipulation including the challenged individuals in the unit on the grounds that the Board's policy concerning stipulations should prevail in that case.[20] Two Board members dissented and the decision has subsequently been limited,[21] if not repudiated entirely.[22]

The statutory mandate of § 2(11) defining supervisors and of § 14(a),[23] excluding supervisors as "employees" for purposes of § 9, cannot be avoided by the Board on procedural grounds on this record, where there is no unjustifiable delay by a party to a representation proceeding or a party who has had a full determination of an issue and seeks to raise it again merely in a different form.

Basic notions of fair play[24] and the fact that the allegations of respondent, if true, raise a substantial question under § 2(11) require that enforcement of the present petition be denied and the case returned for disposition on the merits of Koehler's claimed status as supervisor. Only then would we be presented by a clear Board determination, capable of testing for support by "substantial evidence," evidence that would be equally clearly set forth on the record.

The petition for enforcement will be denied and the case remanded to the Board for disposition in accordance with the foregoing opinion.

20. *Cruis Along Boats* involved the peculiar situation of a victorious union challenging nonetheless the inclusion of 11 "supervisors" in its unit. The majority held that the individuals could not be challenged "for purposes of the election," although they were not necessarily included in an "appropriate" unit. 128 N.L.R.B. at 1021.

21. See, e. g., John R. Crocker Co., 166 N.L.R.B. No. 100, 1967 CCH NLRB ¶ 21,-668 (July 27, 1967), distinguishing *Cruis Along Boats* and stating: "In short, the parties here did not address themselves to the question of whether the employee's responsibility was characterized by any statutory indicia of supervisory status * * *." See, also, Times-World Corporation, 151 N.L.R.B. 947, 948 (1965).

22. Board members Jenkins and Fanning dissented vigorously in Cruis Along Boats, Inc., 128 N.L.R.B. at 1021–26. Six months later in Lake Huron Broadcasting Corporation, 130 N.L.R.B. 908 (1961), at 909, footnote 2, member Fanning reaffirmed his dissenting position in *Cruis Along Boats* and member Kimball, who succeeded member Bean of the *Cruis Along Boats* majority, joined in member Fanning's views. *Cruis Along Boats* appears to have vitality, if any, only when a stipulation of some type has been entered at the initial representation hearing.

23. 29 U.S.C. § 164(a): "* * * no employer * * * shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law * * * relating to collective bargaining."

24. It is particularly appropriate that administrative proceedings remain sufficiently flexible to develop an adequate record on all important issues, when, as is the case with NLRB representation proceedings, the administrative actions and determinations are not directly subject to court review and can be reviewed only in collateral proceedings. See Boire v. Greyhound Corp., 376 U.S. 473, 476–477, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964).