**BURNS ELECTRONIC SECURITY SERVICES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Nos. 1110, 1191, Dockets 79–4213, 80–4027.**

United States Court of Appeals, Second Circuit.

Argued May 1, 1980.
Decided June 18, 1980.

John E. Jay, New York City (Parker, Chapin, Flattau & Klimpl, Johnna G. Tor-

sone, New York City, of counsel), for petitioner.

Corinna L. Metcalf, Atty., N. L. R. B., Washington, D. C. (Richard B. Bader, Marion Griffin, Attys., N. L. R. B., Washington, D. C., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., of counsel), for respondent.

Before FEINBERG, VAN GRAAFEILAND and KEARSE, Circuit Judges.

FEINBERG, Circuit Judge:

Burns Electronic Security Services, Inc. (the Company) petitions to review and set aside an order of the National Labor Relations Board that found that the Company had engaged in various unfair labor practices. The Board cross-petitions for enforcement of its order. The Board found that the Company had violated section 8(a)(5) of the National Labor Relations Act by refusing to bargain with the union certified to represent the employees at three of the Company's facilities in Connecticut, and by unilaterally altering a work requirement without bargaining with the certified union. The Board also found that the Company had violated section 8(a)(1) of the Act when one of its managers made a statement to employees which the Board found tended to restrain the free exercise of employee rights. For reasons stated below, we grant the petition to set aside the Board's finding with respect to the section 8(a)(1) violation, and we remand the section 8(a)(5) claims to the Board for reconsideration.

I

The Company is engaged in the business of selling, installing, monitoring, answering, and servicing electronic security systems, which include burglar alarms, fire alarms, hold-up alarms, water overflow alarms and industrial process alarms. The Company maintains approximately 22 stations throughout the country that monitor and

respond to alarms; at issue here is the union status of employees at facilities in Bridgeport, Hamden and New Haven, Connecticut. In June 1976, the Connecticut Union of Telephone Workers, Inc. (the Union) filed a representation petition with the Board which sought certification of a collective bargaining unit consisting of the Company's employees at the three Connecticut facilities. The Company objected to the proposed unit because it contained a group of employees known as Operator/Runners, who respond when alarms on a subscriber's premises are activated. The Company contended that Operator/Runners were guards within the meaning of section 9(b)(3) of the Act and therefore could not be included within the proposed unit.[1] In July 1976, there was a brief representation hearing, and in October the Regional Director issued a Decision and Direction of Election, holding that the Operator/Runners were not guards under section 9(b)(3) and could be included in the unit. The Board denied the Company's request for review of the Regional Director's finding, and the Union subsequently won the election and was certified.

To test the validity of the determination that Operator/Runners were not guards and hence were properly included within the certified unit, the Company refused to bargain with the Union. The Union subsequently filed unfair labor practice charges with the Board, and a complaint issued in June 1977. For convenience, we will call this the general refusal to bargain charge. Before a hearing was held, company managers posted memoranda at the New Haven facility to the effect that Operator/Runners, when responding to an alarm, were required to wear a uniform and carry either a nightstick or a gun. Although the Company maintained that the notices merely reiterated existing job requirements, the Union claimed that the Company had not previously enforced any requirement that Operator/Runners carry a gun or a nightstick. The Union therefore filed another refusal to bargain charge with the Board, claiming that the Company had again violated the Act by unilaterally altering the working conditions of Operator/Runners without bargaining with the Union. Upon hearing about the Union's second charge, Operations Manager Piraino inquired in the presence of a group of employees as to who was "filing these ridiculous charges in regard to carrying of nightsticks as being a change in company policy[?]" This statement provoked the Union to charge that the Company had violated section 8(a)(1) of the Act by seeking to restrict the free exercise of employee rights.

These various charges were the subject of an unfair labor practice hearing before an administrative law judge (ALJ) in January 1978.[2] The Board's General Counsel moved for summary judgment on the two refusal to bargain charges; the ALJ denied the motion with respect to the claim that the company had altered working conditions without bargaining with the Union, but reserved final decision with respect to the general refusal to bargain charge. In so ruling, the ALJ noted that summary judgment might be appropriate if the latter were the only issue in the proceeding, but concluded that the presence of other independent claims entitled the Company to present evidence in its defense. The ALJ ruled, however, that on the general refusal to bargain issue, the Company could only

---

1. Section 9(b)(3), 29 U.S.C. § 159(b)(3), provides in pertinent part that

(b) The Board shall decide in each case whether . . . , the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: *Provided*, That the Board shall not . . . (3) decide that any unit is appropriate for such purposes if it includes, together with other employees, any individual employed as a guard to enforce against employees and other persons rules to

protect property of the employer or to protect the safety of persons on the employer's premises; but no labor organization shall be certified as the representative of employees in a bargaining unit of guards if such organization admits to membership . . . employees other than guards.

2. In addition to these charges, the Union raised several related allegations which are not relevant to the present petition.

present evidence that was "previously unavailable" and that it was barred from presenting evidence on matters which were or could have been litigated at the previous representation hearing. The ALJ conceded the ambiguity of his ruling, but noted that it would be clarified as the hearing progressed.

At the hearing, the Company introduced considerable evidence concerning the functions of Operator/Runners. Most of this evidence was technically introduced to defend against the claim that the Company had unilaterally altered working conditions by requiring Operator/Runners to carry guns or nightsticks when responding to an alarm; nonetheless, the evidence was also directly relevant to the central issue of whether Operator/Runners were guards under section 9(b)(3) of the Act. In his decision, however, the ALJ granted General Counsel's motion for summary judgment on the general refusal to bargain charge. In so ruling, the ALJ expressly refused to consider the validity of the unit determination in light of the new evidence, instead concluding that principles of administrative res judicata barred relitigation of the issue. The ALJ noted that to reassess the validity of the unit on the basis of the entire record would involve "basic considerations foreclosed to the administrative law judge" and would be "wholly beyond [the ALJ's] province [under] existing Board precedents governing such issue." The ALJ instead concluded that the Company's request that the validity of the certification be assessed in light of the entire record was "more appropriately addressed to the Board." With respect to the other charges, the ALJ ruled that the Company had violated section 8(a)(5) by requiring Operator/Runners to respond to alarms carrying nightsticks or guns without first bargaining for such a change with the Union and that the remark of Manager Piraino inquiring who was filing unfair labor practice charges violated section 8(a)(1) of the Act because it tended to interfere with the free exercise of employee rights.

The Board subsequently adopted the findings of the ALJ, although Board member Murphy dissented from the finding that Piraino's remark violated the Act. On this petition to review, the Company argues strenuously that the evidence adduced at the unfair labor practice hearing conclusively establishes that the Operator/Runners were guards within the meaning of section 9(b)(3). Accordingly, the Company asserts that the ALJ and the Board shirked their statutory responsibilities in refusing to reconsider the unit certification in light of findings that it violated section 8(a)(5) of the Act by unilaterally altering working conditions and that Piraino's remark violated section (8)(a)(1) of the Act. We treat these arguments in separate sections.

## II

The central issue before us is the validity of the Board's finding that the Operator/Runners in the Bridgeport, Hamden and New Haven unit were not guards within the meaning of section 9(b)(3) of the Act. It is conceded that if these employees were properly classifiable as guards, the collective bargaining unit could not include them.[3] The Board contends that there was substantial evidence to support its classification of the Operator/Runners and that the Company violated section 8(a)(5) of the Act when it flatly refused to bargain with the Union. The Company argues that its refusal to bargain was justified because the inclusion of Operator/Runners within the certified unit was erroneous and inconsistent with the Board's classification of Operator/Runners at other Company facilities. These conflicting contentions do not stem simply from different readings of the same record, however. Instead, they reflect a disagreement over what evidence should have been considered by the Board when it reviewed the certification question in the context of the general refusal to bargain charge.

**3.** The Company's Operator/Runners are dispatched only from the New Haven and Bridgeport facilities, although the employees of the Hamden station are also included in the bargaining unit certified by the Board.

In granting General Counsel's motion for summary judgment on that charge, the ALJ refused to consider new evidence on the certification issue produced at the unfair labor practice hearing and instead took into account only the record compiled at the original representation hearing. Contending that the ALJ took the right course, the Board relies primarily on its regulation, 29 C.F.R. § 102.67(f), which provides in pertinent part that the denial of a request for Board review of a regional director's unit determination shall "constitute an affirmance of the regional director's action which shall also preclude relitigating any such issues in any related subsequent unfair labor practice hearing." According to the Board, this provision protects the integrity of the administrative process by requiring a party to produce all available evidence relevant to the unit certification issue at the time of the original representation hearing rather than attempting to relitigate the unit issue in the context of the subsequent unfair labor practice hearing.

On its theory that the record on review in this court is therefore limited on this issue to the evidence produced at the original representation hearing, the Board argues that there is substantial evidence to support the conclusion that the Operator/Runners at the Company facilities were not guards. The Board cites, for example, evidence at the representation hearing that Operator/Runners, when responding to a burglar alarm, were not encouraged to assist police in capturing the intruders and that Operator/Runners in such cases generally waited for the arrival of the police or the owner of the premises. This evidence, in the Board's view, indicates that the duties of the Operator/Runners did not create the potential for personal confrontation that is the hallmark of guard status under section 9(b)(3). See *Drivers, Chauffeurs, Warehousemen and Helpers, Local No. 71 v. NLRB*, 553 F.2d 1368 (D.C.Cir.1977); *Wells Fargo Alarm Services v. NLRB*, 533 F.2d 121 (3d Cir.

1976). Accordingly, the Board asserts that it properly refused to upset the ALJ's grant of summary judgment on the general refusal to bargain charge.

The Company concedes that under ordinary circumstances the principle of administrative res judicata relied upon by the Board would generally preclude relitigation of the unit certification issue in the context of a subsequent unfair labor practice hearing. However, the Company argues that special circumstances here render unjustifiable the Board's refusal to reevaluate the unit determination in light of evidence produced at the unfair labor practice hearing. First, the Company points out that the record produced at the original representation hearing was deficient in several material respects. In ruling that Operator/Runners were not guards, for example, the Regional Director did not have before him a complete job description for Operator/Runners or the Company's reports on burglary attacks. Since a Board Regulation, 29 C.F.R. § 102.-64(a), provides that "[i]t shall be the duty of the hearing officer to inquire fully into all matters and issues necessary to obtain a full and complete record upon which the Board . . . may discharge [its] duties under section 9(c) of the act," the Company argues that the Board's summary affirmance of, and subsequent refusal to reconsider, the Regional Director's ruling on the basis of an incomplete record was improper.[4]

The Company also argues that despite the Board's lip service to principles of administrative res judicata, the issue whether the Company's Operator/Runners were guards was essentially relitigated in the context of the unfair labor practice hearing. In defending against the independent charge that it had unilaterally altered the duties of Operator/Runners without bargaining with the Union, the Company produced considerable evidence of the duties of Operator/Runners. The Company argues that

---

**4.** The Company further argues that the Board's summary affirmance of the ALJ's findings was particularly inappropriate in light of the ALJ's explicit written suggestion that the Company address its arguments concerning the new evidence adduced at the unfair labor practice hearing to the Board.

this evidence, as opposed to the record produced at the original representation hearing, conclusively establishes that the Operator/Runners at the three facilities were guards within the meaning of section 9(b)(3) of the Act. For example, the Company argues that the full record now shows

> that [the New Haven facility] is a UL [Underwriters Laboratory] accredited Central Station, governed by long-standing UL standards so as to maintain [the Company's] economic viability in the market place; that, under the UL standards, Operator/Runners are (and for some 20 years have been) required to carry either a nightstick or pistol; that Operator/Runners at all [Company stations] for many years, as UL standards and the job description required, initiated exterior searches of subscribers' property, whether or not the police had arrived; that Operator/Runners at New Haven, upon finding signs of forcible entry, position themselves at the break-in point until the police arrive, thereby risking confrontation; and that, the Operator/Runners, have in fact detained intruders, assisted police in the capture of such intruders, including unauthorized employees, on numerous occasions and patrol the premises hourly if an alarm system cannot be reset during a closed period.

In light of this additional evidence, the Company contends that the Board's conclusion that the Operator/Runners are not guards is untenable and that the Board's reliance on res judicata is misplaced in a case like this, where the issue has in fact been relitigated in the context of a related unfair labor practice charge.

Finally, the Company argues that because the Board has steadfastly refused to consider the certification issue in light of a fully developed record, it has reached a conclusion—that the Operator/Runners are not guards—that is inconsistent with an "unbroken line of authority spanning more than a quarter of a century construing . . . § 9(b)(3)." In support, the Company cites numerous Board decisions for the proposition that employees with duties generally similar to the Company's Operator/Runners in the Bridgeport, Hamden, and New Haven unit were guards within the meaning of the Act.[5] Three such decisions are particularly noteworthy, for they held that Operator/Runners at other Company facilities in Buffalo, New York, Hartford, Connecticut and Springfield, Massachusetts were guards.[6] Thus, the Company argues that the Board's summary action in this case is inconsistent not only with its prior treatment of similar employees throughout the industry, but also with its classification of other Operator/Runners employed by the Company.

■ Without denigrating the importance generally of the principle of administrative res judicata relied upon by the Board, we agree with the Company that in the unusual circumstances of this case the Board should have reconsidered the unit certification in light of the entire record. First, the record compiled at the original representation hearing was deficient. Although prior counsel apparently failed to develop a full record supporting the Company's position,[7]

---

5. The Company cites, e. g., *NLRB v. American District Telegraph Co.*, 205 F.2d 86 (3d Cir. 1953); *MDS Courier Service, Inc. v. Teamsters Local No. 150*, 284 NLRB No. 181 (April 20, 1980); *A.D.T. Co.*, 112 NLRB 80 (1955); *Rhode Island Electric Protective Co. and International Brotherhood of Electrical Workers, Local Union 99, AFL–CIO*, NLRB Case No. 1–RC–13,026 (decided Jan. 1, 1974, not officially reported); *American District Telegraph Co. and Teamsters Local 599*, NLRB Case No. 1–RC–13,569 (decided December 4, 1979, not officially reported). See also cases cited in note 6 infra.

6. See *Burns Electronic Security Services, Inc. and International Union, United Plant Guard Workers of America*, NLRB Case 13,752 (May 29, 1975, not officially reported); *Burns Electronic Security Services, Inc. and Local 376, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW)*, NLRB Case No. 1–RC–13,413 (September 25, 1974, not officially reported); *Burns Electronic Security Services, Inc. and Communications Workers of America, AFL–CIO*, NLRB Case No. 3–RC–5295 (January 19, 1975, not officially reported).

7. Most notably, the Company's counsel failed to introduce into evidence a complete job description for the Operator/Runners at the three facilities.

the Board was nonetheless under an independent obligation in the initial representation hearing to inquire fully into all matters and issues necessary to obtain a full and complete record. 29 C.F.R. § 102.64(a). In light of the substantial amount of new, relevant information introduced at the unfair labor practice hearing, we do not believe that the original certification determination was based on an adequate record. In addition, the hearing officer at the representation hearing excluded evidence concerning the functions of Operator/Runners at the nearby Hartford station, which the Board had previously held to be guards under section 9(b)(3). See *Burns Electronic Security Services, Inc. and Local 376, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW)*, NLRB Case No. 1–RC–13,413 (decided September 25, 1974, not officially reported).

More importantly, we find that the Board's reliance on a rule against relitigation to avoid examining the validity of the unit certification to be overly technical in a case like this, where the functions of the Operator/Runners were essentially reliti-

gated in the unfair labor practice hearing on the related charges.[8] The purpose of the rule, as stated by the Board in its brief, is to prevent an employer from deliberately withholding evidence at the representation hearing and then seeking to use it in the subsequent unfair labor practice hearing. Had the Company's refusal to bargain based on its objection to the certified unit been the sole subject of the unfair labor practice proceeding, the Board would have had a legitimate interest in avoiding reopening of the record.[9] But in this case, where new evidence on a related unfair labor practice charge was admitted, and that evidence bears directly on the unit certification issue, it scarcely advances the interests of administrative efficiency for the Board to refuse to consider such evidence in ruling on the general refusal to bargain issue, while simultaneously relying on such evidence in assessing the related claim that the Company unlawfully altered the job requirements of Operator/Runners. To be sure, the speedy disposition of troublesome cases is aided by adherence to procedural rules, but concerns over "adminis-

**8.** Indeed, the ALJ appeared to recognize that the Board's rule against relitigation was inappropriate in the unusual context of this case, noting during the hearing that "[i]t strikes me very much like the back door being open when the front door has been closed. I do not see a way out of it."

**9.** The Supreme Court generally approved the Board's policy against relitigation of issues determined in the original representational hearing in *Pittsburgh Glass Co. v. NLRB*, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941). That case, however, does not alter our conclusion that the Board erred in refusing to consider the validity of the certified unit in light of the evidence adduced at the unfair labor practice hearing. In *Pittsburgh Glass*, the Court held that it was not a denial of due process for the Board to refuse to consider evidence relating to the certification issue when petitioner first sought to introduce such evidence at the unfair labor practice hearing. The Court, however, carefully considered the evidence that was allegedly wrongfully excluded and concluded in each case that the evidence was cumulative, not probative or tangential. The court further observed that "[i]f the Company or the . . Union desired to relitigate this issue, it was up to them to indicate in some way that the evidence they wished to offer was more than

cumulative. Nothing more appearing, a single trial of the issue was enough. . . . Further, if we consider all the contentions about the exclusion of evidence together instead of separately, we do not find that in the aggregate the evidence excluded could have materially affected the outcome on the 'appropriate unit' issue, in light of the criteria by which the Board determined the issue." Id. at 162–63, 61 S.Ct. at 917. It is thus clear that *Pittsburgh Glass*, while generally sanctioning the Board's rule against relitigation, does not prevent this court from insisting in an appropriate case that the Board make the unit determination on the basis of a more complete record. In this case, much of the evidence introduced in the unfair labor practice hearing was non-cumulative and directly pertinent to the certification issue. Moreover, we are far from certain that this evidence, taken as a whole, could not have materially affected the issue of whether Operator/Runners were properly included in the certified unit. Finally, *Pittsburgh Glass* did not address the appropriateness of the Board's rule in a case, such a this, where there is a strong argument that the certification determination conflicts with Board precedent affecting not only similarly situated employees but also the same employer. See notes 5 and 6 supra.

trative efficiency" can be carried too far. Cf. *Catholic Medical Center of Brooklyn and Queens, Inc. v. NLRB*, 589 F.2d 1166, 1175 n.10 (2d Cir. 1978). In appropriate cases, the Board has occasionally overlooked procedural rules in order to correct fundamental errors in the disposition of a case, see, e. g., *Serv-U-Stores, Inc.*, 234 NLRB 1143 (1978); *American Broadcasting Company*, 134 NLRB 1458, 1459 n.1 (1961) (noting that "public confidence in the administrative process requires a tribunal to admit its errors and not push a matter to its erroneous conclusion under the guise of procedural regularity"). Cf. *Burlington Food Store, Inc.*, 172 NLRB 781 (1968). Because the evidence introduced at the unfair labor practice proceeding raises a substantial claim that the original certification was incorrect, we believe that a more flexible response by the Board was required in the present case. Cf. *NLRB v. Howard Johnson Co.*, 398 F.2d 435 (3d Cir. 1968).

The final factor that leads us to conclude that reconsideration of the unit in light of the entire record is warranted is the strong claim of inconsistency between the Board's classification of Operator/Runners in this case and its treatment of employees with similar job descriptions at other Company facilities and at other companies providing a similar service. Although the Regional Director purported to distinguish these cases in ruling that the Operator/Runners were not guards, these distinctions are not necessarily persuasive and to some extent appear to conflict with findings made by the ALJ in the course of the unfair labor practice proceeding. More importantly, by refusing to review the Regional Director's findings and summarily affirming the ALJ's ruling, the Board has avoided addressing the apparent inconsistency between the classification of the Operator/Runners in the present case and in the three other Board decisions involving the Company. There may be a valid basis for the differing classifications, but if so, we believe that the Board should state its reasons explicitly after consideration of the entire record. See *NLRB v. Groendyke Transport, Inc.*, 372 F.2d 137 (10th Cir.),

cert. denied, 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 993 (1967).

Under all the circumstances, we conclude that the case should be remanded to the Board for reconsideration, on the record of both the representation hearing and the unfair labor practice hearing, of the issue whether the Operator/Runners in the Bridgeport, Hamden and New Haven unit are guards within the meaning of section 9(b)(3) of the Act. In so doing, we express no opinion on the merits of this question; nor do we preclude the Board, in its discretion, from reopening the record for presentation of further evidence.

### III

As previously noted, the ALJ found that the Company had committed a second violation of section 8(a)(5) by requiring Operator/Runners to carry guns or nightsticks, without first bargaining for this condition with the Union. Because the validity of the certified unit must now be reconsidered by the Board, we do not consider at this time this aspect of the Company's petition to review and set aside the Board's finding of a second section 8(a)(5) violation, or of the Board's cross-petition to enforce. Instead, we also remand this issue to the Board. If the Board again finds, after due consideration, that the Operator/Runners were properly included within the certified unit, the Company may then seek review in this court of both that determination and also the Board's finding that it violated section 8(a)(5) by unilaterally altering job requirements. If, however, the Board should find that the Operator/Runners were guards, the certified unit will be invalid and the determination that the Company altered job requirements without bargaining with that unit's representative will be void.

### IV

The Board, with Member Murphy dissenting, also summarily affirmed a finding of the ALJ that the Company had violated section 8(a)(1) of the Act when Manager Piraino inquired in the presence of a

group of employees who was "filing these ridiculous charges in regard to carrying of nightsticks as being a change in company policy[?]" We set aside this finding, for the evidence on the record falls far short of meeting the test set forth by this court in *Bourne v. NLRB*, 332 F.2d 47 (2d Cir. 1964) (per curiam), and related cases. Under this court's rule, employer interrogation is not unlawful unless it is "coercive in light of all of the surrounding circumstances," *Retired Persons Pharmacy v. NLRB*, 519 F.2d 486, 492 (2d Cir. 1975), and in *Bourne* we noted some factors that should be considered in making this determination. These included:

(1) The background, i. e. is there a history of employer hostility and discrimination?

(2) The nature of the information sought, e. g. did the interrogator appear to be seeking information on which to base taking action against individual employees?

(3) The identity of the questioner, i. e. how high was he in the company hierarchy?

(4) Place and method of interrogation, e. g. was employee called from work to the boss's office? Was there an atmosphere of "unnatural formality"?

(5) Truthfulness of the reply.

332 F.2d at 48.

In the present case, neither the ALJ nor the Board gave adequate consideration to these factors in concluding that Piraino's remark violated section 8(a)(1). Moreover, our review of the record in this case indicates that Piraino's statement, while expressing considerable exasperation on his part, was neither intended to nor capable of interfering with the free exercise of employee rights. There is no finding by the Board or substantial evidence on the record that the remark was motivated by anti-union animus, that it was made in an attempt to seek information upon which the Company could take action against pro-union employees, or that it was made in a coercive or hostile setting. Absent findings of this sort, there is no basis for the Board's ruling.

Accordingly, we grant the Company's petition to review and set aside the Board's finding with respect to the section 8(a)(1) violation, and we remand the section 8(a)(5) claims to the Board for reconsideration in accordance with this opinion.