STATE OF IOWA and Iowa Tele-
communications and Technolo-
gy Commission, Petitioners,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents.

Bell Atlantic Telephone Companies,
et al., Intervenors.

No. 99–1149.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 24, 2000.

Decided June 27, 2000.

Michael D. Hays argued the cause for petitioners. With him on the briefs were Kenneth D. Salomon and J.G. Harrington.

James M. Carr, Counsel, Federal Communications Commission, argued the cause for respondents. With him on the briefs were Christopher J. Wright, General Counsel, Daniel M. Armstrong, Associate General Counsel, and John E. Ingle, Deputy Associate General Counsel. Catherine G. O'Sullivan and Nancy C. Garrison, Attorneys, U.S. Department of Justice, entered appearances.

Donald M. Falk, Michael E. Glover, Edward H. Shakin, Dan L. Poole, Robert B. McKenna, William F. Maher, Jr., Stephen L. Goodman, Richard White Jr., Michael S. Pabian, David Cosson, Lawrence E. Sarjeant, Linda Kent, Keith Townsend, John Hunter and Julie Rones were on the brief for intervenors. L. Marie Guillory and Lawrence W. Katz entered appearances.

Before: GINSBURG, SENTELLE, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

The State of Iowa and the Iowa Telecommunications and Technology Commission (collectively, Iowa) petition for review of a declaratory ruling by the Federal Communications Commission. The Commission held that the Iowa Communications Network (ICN) is not a common carrier and therefore not a "telecommunications carrier" within the meaning of § 254(h) of the Telecommunications Act of 1996, 47 U.S.C. § 254(h). Consequently, the ICN is ineligible for direct universal

service support for the discounted telecommunications services it provides to schools, libraries, and rural health care providers. *See* Federal–State Joint Board on Universal Service, *Declaratory Ruling,* 14 F.C.C.R. 3040, 1999 WL 76932 (1999) (*Declaratory Ruling*).

Iowa raises two arguments in its petition for review. First, Iowa claims the Commission erred by determining that the ICN is not a common carrier. Second, Iowa claims that regardless whether the ICN is a common carrier, it is a "telecommunications carrier" within the meaning of the 1996 Act, and therefore is eligible for direct universal service support. To the extent the latter claim is not foreclosed by our recent decision in *Virgin Islands Tel. Corp. v. FCC,* 198 F.3d 921, 922, 925 (1999) (upholding as reasonable FCC's position that " 'telecommunications carrier' means essentially the same as common carrier"), it is foreclosed by the deference we owe the Commission's reasonable interpretation of the statute it administers, pursuant to step two of the analysis in *Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

With respect to Iowa's first claim, however, the Commission failed to address Iowa's argument that offering services to all potential customers to whom the carrier, under state law, may provide services makes the ICN a common carrier for purposes of the 1996 Act. We therefore grant the petition for review and remand this matter to the Commission to consider Iowa's argument in the first instance.

## I. Background

The Iowa legislature established the ICN in 1989 to provide heavily subsidized high-speed telecommunications services throughout the state, particularly to areas that may be underserved by the local exchange carrier. The legislature did not, however, authorize the ICN to serve everyone in the state that could use its services; in particular, the ICN may not provide services to individuals or to most private businesses. Rather, the ICN may provide service only to "public and private agencies," Iowa Code § 8D.11(2), defined as follows:

"Private agency" means an accredited nonpublic school, a nonprofit institution of higher education eligible for tuition grants, or a hospital licensed pursuant to chapter 135B or a physician clinic to the extent provided in section 8D.13, subsection 16.

"Public agency" means a state agency, an institution under the control of the board of regents, the judicial branch . . . a school corporation, a city library, a regional library . . . a county library . . . or a judicial district department of correctional services . . ., an agency of the federal government, or a United States post office which receives a federal grant for pilot and demonstration projects.

Iowa Code § 8D.2(4)-(5).

Iowa Code § 8D.9 further divides the class of "public and private agencies" into two subclasses. First, Certifying Users, which are institutions of higher education, area education agencies, and certain United States Post Offices, were required to certify by July 1, 1994 their intention to connect to the network. Any Certifying User that did not certify its intention by that date may not use the ICN without specific legislative authorization. Any Certifying User that did timely certify its intention to connect to the ICN must receive all its telecommunications services from the ICN unless it obtains a waiver based upon certain objective criteria specified in the statute. *See id.* § 8D.9(2). Second, Preauthorized Users, which are all other public and private agencies, may connect to the ICN at any time without further authorization from the legislature, and may choose which telecommunications services to take from the ICN. Although Iowa points to no statute requiring that the ICN serve all authorized users, the parties agree that in practice the ICN will provide service to any Preauthorized User

and to any timely Certifying User that requests service.

Under § 254(h)(1) of the 1996 Act, a "telecommunications carrier" must provide services at discounted rates to schools, libraries, and rural health care providers, and is entitled to receive from the Commission, in an amount equal to the aggregate discount given to such entities, either a reimbursement or an offset against the carrier's obligation to participate in or contribute to the universal telecommunications service fund. 47 U.S.C. § 254(h)(1). "Telecommunications carrier" is defined as "any provider of telecommunications services," *id.* § 153(44), and "telecommunications service" is defined as "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used," *id.* § 153(46).

The Commission determined that "telecommunications services" means "only telecommunications provided on a common carrier basis." Federal–State Joint Board on Universal Service, *Report & Order*, 12 F.C.C.R. 8776, 9177 ¶ 785, 1997 WL 236383 (1997). Therefore, in the Commission's scheme for administering § 254, a carrier that provides a service on a non-common carrier basis is not a "telecommunications carrier" and hence is ineligible for universal service support with respect to that service.

In response to Iowa's request for a declaratory ruling, the Commission held that the ICN is not a common carrier. *See* 14 F.C.C.R. at 3056 ¶ 29. Specifically, the Commission noted that the primary characteristic of a common carrier is that it "holds [it]self out to serve indifferently all potential users," *id.* at 3050 ¶ 21, and determined that the ICN failed this test for two reasons: The ICN does not hold itself out to serve all users, but is instead limited to serving only "public and private agencies," as defined by the statute law of Iowa, *see id.* ¶¶ 22, 24–25; and the ICN impermissibly discriminates among users

in the terms upon which it offers service, *see id.* at 3051 ¶ 23. Iowa petitions for review of the *Declaratory Ruling*.

## II. Analysis

Before the Commission, Iowa argued, among other things, that the ICN is a common carrier because it offers service to all the users it is authorized by law to serve:

> [T]he case law firmly establishes that ICN only need serve a specified clientele indifferently to qualify as a common carrier.... [ICN's] customers are determined by its governing statute, not by the ICN itself. Under that statute the Legislature designated broad classes of potential customers and required the ICN to serve all of the members of those classes.

In its brief to this court, Iowa reiterates this argument and relies primarily upon two cases for support: *FCC v. Midwest Video Corp.*, 440 U.S. 689, 99 S.Ct. 1435, 59 L.Ed.2d 692 (1979), and *National Ass'n of Regulatory Util. Com'rs v. FCC (NARUC)*, 525 F.2d 630 (D.C.Cir.1976).

In *Midwest Video* the Commission had promulgated regulations requiring cable television systems to allocate channels for public, educational, government, and leased access users. 440 U.S. at 693, 99 S.Ct. 1435. Although the regulations required that the public and leased access channels be open to all potential users, use of the educational and government access channels was limited respectively to "local educational authorities" and the "local government." 47 C.F.R. § 76.254(a)(2)-(3) (1977). A private organization could not air an educational program on the educational access channel because it would not come within the class of users authorized by law. Yet the Supreme Court held that the access rules, by "transferr[ing] control of the content of access cable channels from cable operators to members of the public" had "relegated cable systems,

*pro tanto,* to common-carrier status." 440 U.S. at 700–01, 99 S.Ct. 1435.

In *NARUC* this court reviewed the Commission's determination that Specialized Mobile Radio Systems (SMRS) providing transmission services were not common carriers. 525 F.2d at 639. The court announced a test for common carriage that focused primarily upon whether the carrier holds itself out indiscriminately to serve all to whom it can "legally and practically be of use." *Id.* at 640–42. We wrote:

> It is not an obstacle to common carrier status that SMRS offer a service that may be of practical use to only a fraction of the population, nor that the [FCC's] Order limits possible subscribers to SMRS services to eligibles under Sections 89, 91, and 93 of the Regulations. The key factor is that the operator offer indiscriminate service to whatever public its service may legally and practically be of use.

*Id.* at 642.

Both *Midwest Video* and *NARUC* can be read as approving the general rule that a carrier offering its services only to a legally defined class of users may still be a common carrier if it holds itself out indiscriminately to serve all within that class. That is precisely Iowa's argument.

Although the Commission expressly recognized in the *Declaratory Ruling* that the ICN's customer base is restricted by state law rather than by the carrier's own choice, *see* 14 F.C.C.R. at 3053 ¶ 25, it did not respond to this argument. Before this court, the Commission first claims that the argument was not clearly enough presented before the agency to elicit an answer. True it is that the State did not cite cases before the agency, but it clearly made the argument—as is evident in the passage quoted in the first paragraph of this part of our opinion. The Commission's only substantive response is that *Midwest Video* and the other cases cited by Iowa involved the provision of a specialized service that "necessarily limited the class of customers that the carrier would serve."

This response fails to address the issue whether a legal prohibition upon serving some potential customers to whom the service would be of use—in *Midwest Video,* for example, those capable of producing video programming suitable for the government and educational access channels—is inconsistent with being a common carrier.

We are not suggesting that *Midwest Video* or *NARUC* or the other cases Iowa cites require a decision in Iowa's favor. Rather, our point is that the Commission's failure to address Iowa's argument requires that we remand this matter for the Commission's further consideration. *See, e.g., Frizelle v. Slater,* 111 F.3d 172, 177 (D.C.Cir.1997) (remanding where agency "did not respond to two ... arguments, which do not appear frivolous on their face and could affect the [agency's] ultimate disposition"); *AT&T Corp. v. FCC,* 86 F.3d 242, 247 (D.C.Cir.1996) (remanding where Commission "completely failed to address" argument raised in *ex parte* letter).

The Commission also ruled that the ICN is not a common carrier because it impermissibly discriminates among users in the terms of service it offers. The Commission identified three distinct forms of discrimination: (1) Certifying Users but not Preauthorized Users must take all or none of their telecommunications services from the ICN; (2) some Certifying Users may receive waivers of the all-or-none requirement; and (3) those that did not timely certify, as well as all potential users that are not public or private agencies, are excluded entirely from using the ICN. *Declaratory Ruling,* 14 F.C.C.R. at 3051 ¶ 23.

In its opening brief to this court, Iowa pointed out that common carriers typically treat different classes of customers differently, and that the Communications Act itself contemplates reasonable distinctions in the terms and conditions of service offered to different classes of customers. *See* 47 U.S.C. § 201(b) ("communications

... may be classified into ... such [ ] classes as the Commission may decide to be just and reasonable, and different charges may be made for the different classes of communications"). In its responsive brief, the Commission reiterated but did not meaningfully argue its first and second grounds for saying that the ICN unduly discriminates. We therefore follow the Commission's lead in focusing exclusively upon the third form of discrimination. *See SEC v. Banner Fund Int'l*, 211 F.3d 602, 613–14 (D.C.Cir.2000) (declining to address "asserted but unanalyzed" argument not developed after being challenged by adverse party). Even as to that ground, the Commission's defense is conclusory:

> [W]hile common carriers may permissibly engage in some discrimination among classes of users ... [the] exclus[ion of] entire classes of potential users from its customer base simply because they do not fit the Iowa Code's definition of a private or public agency ... is irreconcilable with well-established principles of common carriage.

Moreover, as the Commission conceded at oral argument, this claim of discrimination raises precisely the same question as the Commission's first reason for denying the ICN common carrier status: Whether holding out service only to the class of users authorized by law to receive it is inconsistent with being a common carrier. Therefore, discrimination of the sort here claimed is not an independent basis for denying the ICN's common carrier status, and does not alter our conclusion that we must remand this matter for the Commission's further consideration.

### III. Conclusion

The Commission failed to address Iowa's argument that the ICN is a common carrier because it holds out service indiscriminately to all the users it is authorized by law to serve. Therefore, we grant the petition for review and remand this case for further consideration by the Commission.

*So ordered.*