YUKON–KUSKOKWIM HEALTH
CORPORATION, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 99–1440.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 7, 2000.

Decided Dec. 19, 2000.

James E. Glaze argued the cause for petitioner. With him on the briefs were Lloyd Benton Miller, Donald J. Simon, Stephen H. Hutchings and Douglas S. Burdin.

Sharon I. Block, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were Leonard R. Page, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Charles Donnelly, Supervisory Attorney.

Before: GINSBURG, RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

Separate statement dissenting in part filed by Circuit Judge RANDOLPH.

GINSBURG, Circuit Judge:

The Yukon–Kuskokwim Health Corporation (Yukon), a non-profit organization controlled by Alaska Native tribes, challenges the National Labor Relations Board's assertion of jurisdiction over a hospital that Yukon operates. The Board properly rejected the employer's claim to be exempt pursuant to § 2(2) of the National Labor Relations Act (NLRA) on the ground that it is an Indian tribe acting in a governmental capacity. The Board failed, however, to consider the employer's argument that it is entitled to exemption under § 2(2) because the Indian Self Determina-tion Act (ISDA) authorizes it to act as an arm of, and thus to share in the exemption of, the United States. Accordingly, we remand this matter to the Board for further proceedings.

## I. Background

A group of Alaska Native tribes formed Yukon in 1969 to provide health services, primarily to Alaska Natives, in Southwestern Alaska. Yukon is controlled by a board of directors elected by the tribal councils of the 58 tribes in the region.

In 1975 the Congress enacted the ISDA, 25 U.S.C. §§ 450 *et seq.*, to bring about "an orderly transition from the Federal domination of programs for, and services to, Indians to effective and meaningful participation by Indian people in the planning, conduct, and administration of those programs and services." 25 U.S.C. § 450a(b). The federal government recognized Yukon as an "Indian tribe" for purposes of the ISDA and, pursuant to that statute, Yukon began to assume responsibility from the Indian Health Service, an agency within the U.S. Department of Health and Human Services, for the operation of clinics in native villages throughout Southwestern Alaska.

In 1991 Yukon took over a hospital previously operated by the IHS in Bethel, Alaska, the largest town in the region. Most of the federal employees at the hospital, including 40 nurses, remained on staff. In 1996 the Board received an election petition from a union seeking to represent the nurses. Yukon opposed the petition on the basis of § 2(2) of the NLRA, which excludes from the definition of "employer" "the United States or any wholly owned Government corporation … or any State or political subdivision thereof." 29 U.S.C. § 152(2). Yukon argued that it qualified for exemption under § 2(2) both as a political subdivision (because it is an Indian tribe acting in a governmental capacity) and as an arm of the United States

(because it operates a federal hospital pursuant to the ISDA).

The Board overruled Yukon's objection on the ground that the Board had never applied the exemption in § 2(2) to the activities of an Indian tribe not conducted on an Indian reservation. The Board certified the union and Yukon took a refusal to bargain charge so that it could get judicial review of the Board's order under §§ 10(e) and (f) of the NLRA. 29 U.S. §§ 160(e) and (f).

## II. Analysis

Yukon advances two arguments for the proposition that its hospital is not subject to the NLRA. First, Yukon argues that it qualifies under § 2(2) as a "State or political subdivision" because it is an Indian tribe acting in a governmental capacity. Second, Yukon argues that it shares in the exemption that § 2(2) grants to the federal government because the ISDA authorizes it to operate a federal hospital pursuant to a government-to-government compact with the United States.

### A. *Governmental Capacity*

 Yukon argues that the Board acted arbitrarily in limiting the exemption afforded to Indian tribes under § 2(2) to activities conducted on a reservation, rather than limiting the exemption to "governmental activities" of Indian tribes, wherever conducted. In our review of the Board's decision, we "must accept the Board's position unless it conflicts with the 'unambiguously expressed intent' of the Congress or is [otherwise] not 'a permissible construction of the statute.'" *George A. Hormel and Co. v. NLRB,* 962 F.2d 1061, 1065 (D.C.Cir.1992) (quoting *Chevron v. NRDC,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

In the past, the Board has interpreted the exemption under § 2(2) for "any State or political subdivision thereof," to include "entities that are either (1) created directly by the State, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." *NLRB v. Natural Gas Utility Dist. of Hawkins County, Tennessee,* 402 U.S. 600, 604–05, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971). In *Fort Apache Timber Co. v. Construction Bldg. Materials, Local 83,* 1976–77 NLRB Dec. 17,475, 1976 WL 7465 (Oct. 19, 1976), the Board applied this test to conclude that because "the Fort Apache Timber Company is an entity administered by individuals directly responsible to the Tribal Council ... [it is] exempt as a governmental entity recognized by the United States, to whose employees the Act was never intended to apply." *Id.* at 28,876 n. 22.

More recently, in *Southern Indian Health Council v. San Diego Med. Employees Union,* 1988–89 NLRB Dec. 15,-052, 1988 WL 213908 (July 29, 1998), the Board applied the "direct responsibility" test to a hospital located on a reservation and operated by a consortium of seven tribes. The Board concluded that the hospital was exempt from the NLRA pursuant to the "State or political subdivision" exemption because "the directors of the Employer are directly appointed by, and subject to removal by, the governing bodies of the member tribes." *Id.* at 28,226.

Later, in *Sac & Fox Industries,* 1992–93 NLRB Dec. 17,250, 1992 WL 90688 (Apr. 24, 1992), the Board modified its test for application of the "State or political subdivision" exemption to Indian tribes. In that case the tribe had secured a $30 million supply contract with the Department of Defense, for which it had built or acquired four factories not on its reservation. Many of the workers employed at the acquired factories previously had been represented by a union, but the tribe argued that its substitution as the employer made the operation exempt from the NLRA and, hence, from the obligation to bargain with the union. The Board rejected this claim, explaining that "[a]lthough the Board's decision in *Fort Apache* [ ]

contains statements to the contrary ... we read that decision as limited to situations in which the tribal enterprise is located on the reservation." *Id.* at 32,416.

Yukon argues that the Board should read *Sac & Fox* as having denied exemption to the off-reservation factories in material part because of their commercial nature, not simply because of their location off the reservation. The Board, however, has never drawn a distinction based upon the nature of the Indian enterprise. The Board first said somewhat tentatively in *Sac & Fox* that the "exemption in Section 2(2) for a 'political subdivision' of a 'State' does not clearly include an off-reservation tribal enterprise." *Id.* Now, the Board has firmly concluded that an Indian tribe does not qualify as a "State or political subdivision" for purposes of § 2(2) when it conducts activities off its reservation. We can hardly say that position is unreasonable.

An Indian tribe, like any other governmental unit, typically operates in its governmental capacity only within its geographical jurisdiction. There are, to be sure, exceptions to that general rule, as recognized, for example, in the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605(a)(2). The distinction between commercial and governmental activities, however, is often elusive, *see Princz v. Federal Republic of Germany,* 26 F.3d 1166, 1172 (D.C.Cir.1994) (noting that FSIA, rather than attempting to define "commercial" and "governmental" activity, leaves to courts the task of distinguishing between the two), and the Board has long and reasonably preferred bright line rules in order to avoid disputes over its jurisdiction. *See, e.g., Siemons Mailing Service,*

122 N.L.R.B. 81, 85, 1958 WL 13198 (1958) (setting dollar threshold for the "effect on commerce" sufficient to support Board jurisdiction). Accordingly, we defer to the Board's interpretation and reject Yukon's argument to the contrary.

## B. *The ISDA*

Yukon also argues that it is exempt from the NLRA pursuant to § 2(2) because that provision exempts "the United States" and here Yukon "stepped into the shoes of" and "acts exactly for, and as, the United States" because it operates a federal hospital pursuant to a government-to–government compact authorized under the ISDA.* Additionally, Yukon argues that for the Board to assert jurisdiction over it would undermine the purpose of the ISDA, namely, to increase tribal self-governance.

In the decision under review the Board mentioned but dismissed the ISDA in a single sentence:

> We further reject the Employer's contention that it is exempt from coverage because in light of the government-to-government Compact delegating Federal functions to the tribes on Federal property reserved and intended for that purpose, the Employer functions as an arm to [sic] the United States, and is, thus, an "integral part of the government of the United States as a whole."

328 N.L.R.B. No. 101, at 4, 1999 WL 419507 (June 18, 1999). The Board then repeated its conclusion that it has limited tribes' exemption under § 2(2) "to situations in which the tribal enterprise is located *on the reservation.*" *Id.* (emphasis in original). The Board appears simply to

---

* Judge Randolph, in his dissent, states that his "colleagues think that perhaps Yukon also wanted to be considered the United States for the purpose of § 2(2)." Lest we be thought utterly mad, he acknowledges a "hint here and there" in its briefs to this court that Yukon "might have had this in mind," but says that this was not "the thrust of its presentation," either before the Board or here. We think that it was *a* thrust. The heading of

Part IV of Yukon's brief to the Board asserted that "The 58 Tribes are Exempt as an Integral Part of the United States [Government]," and the ensuing five pages (28–33) were devoted to arguing the point. Yukon renewed the argument before this court in the section of its brief headed "Tribes operating pursuant to the [ISDA] are treated as the equivalent of federal agencies under the [NLRA]."

have misunderstood the tribe's argument here, which is that its exemption derives not from its own sovereignty as an entity akin to a "State or political subdivision" but, rather, from the exemption granted to "the United States." For the Board to limit to the confines of an Indian reservation the exemption granted to the United States makes no sense. Additionally, the Board wholly failed to address Yukon's argument that asserting jurisdiction over the hospital would "directly contraven[e] the ISDA's goal" of increasing tribal self-governance.

■ As this court explained in *New York Shipping v. Federal Maritime Commission*, 854 F.2d 1338, 1370 (1988):

[A]n agency, faced with alternative methods of effectuating the policies of the statute it administers, (1) must engage in a careful analysis of the possible effects those alternative courses of action may have on the functioning and policies of other statutory regimes, with which a conflict is claimed; and (2) must explain why the action taken minimizes, to the extent possible, its intrusion into policies that are more properly the province of another agency or statutory regime.

The ISDA is undoubtedly intended to remove tribal programs from federal oversight. *See Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 510, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (noting that ISDA "reflect[s] Congress'[s] desire to promote the goal of Indian self-government"). Indeed, in the amendments to the ISDA enacted while this case was on review, the Congress renewed its commitment to Indian self-determination. *See* Tribal Self–Governance Amendments of 2000, P.L. 106–260, 114 Stat. 711 § 2(3) (Aug. 18, 2000).

■■ The Board's one-sentence rejection of Yukon's arguments from the ISDA both relies upon what, in this context, is an irrelevant distinction and ignores the Board's obligation to address and to minimize conflict with another statutory regime with which a disparity is claimed. Although the General Counsel of the Board, in her argument before this court, addressed in somewhat greater detail the Board's possible reasons for rejecting Yukon's arguments from the ISDA, " 'courts may not accept appellate counsel's *post hoc* rationalizations for agency action.' " *NLRB v. Metropolitan Life. Ins.*, 380 U.S. 438, 444, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)).

■ The Board's inadequate attention to the ISDA requires that we remand this matter to the agency for further consideration. *See, e.g., Iowa v. FCC*, 218 F.3d 756 (D.C.Cir.2000) (remanding for agency to address potentially dispositive argument). On remand, the agency must determine whether Yukon qualifies as "the United States" for purposes of § 2(2); in reaching its conclusion, the Board will need to consider what allowance, if any, the NLRA must make in order to accommodate federal Indian law, as reflected in the ISDA. As we noted in *New York Shipping*, our review of such a determination "remains a matter of checking the [Board] against the terms of the [labor] laws. This is precisely the type of appellate exercise governed by *Chevron*; our review must be correlatively deferential." 854 F.2d at 1364. It is for the agency, therefore, to consider the petitioner's argument in the first instance.

### III. Conclusion

For the reason set out in Part II B above, we deny enforcement of the order issued by the Board and remand this case to the agency for further consideration of the petitioner's argument from the ISDA.

*So ordered.*

RANDOLPH, Circuit Judge, dissenting in part:

I agree with the court's opinion except for part II.B., which remands the case to the Board for "further consideration of the

petitioner's argument from the" Indian Self-Determination Act. Maj. op. at 718.

No principle of administrative law compels an agency to respond to gibberish. It is therefore understandable that the Board never responded to an argument that the Indian Self–Determination Act removed Yukon from the Board's jurisdiction. Maj. op. at 717. The Board did not respond because Yukon never made any coherent argument to this effect. And it barely managed to make one in this court. About all Yukon did before the Board and before us is slap the Self–Determination Act down on the table in the hope that someone will figure out why it should matter.

Here are the few assertions Yukon presented to the Board regarding the statute. The Self-Determination Act "authorizes and encourages tribal governments to assume operation of federal Indian programs." Employer's Brief on Review of Jurisdictional Determination at 5. Indeed it does. "Through the Act, Congress intended to shift programs from the federal government to tribal governments, thereby reducing federal domination of Indian programs." *Id.* That appears correct. "Nothing in the federal government's authorization requires that the tribes' ... activities [conducted pursuant to the Self-Determination Act] occur 'on reservation.' " *Id.* at 8. This is obvious; Yukon's hospital is not on a reservation. (No one—the Board included—has required Yukon or any Indian tribe to conduct such activities on reservations.) What then is Yukon's point? All of its statements about the Self–Determination Act are contained in the section of its brief claiming an exemption as a state or federal government under § 2(2). The section's heading is entitled **"THE HOSPITAL IS OPERATED BY FEDERALLY RECOGNIZED SOVEREIGN TRIBES ENTITLED TO THE GOVERNMENTAL EXEMPTION."** *Id.* at 4. The "governmental exemption" is § 2(2) of the National Labor Relations Act, 29 U.S.C. § 152(2), the provision granting an exemption to the federal government and state and local governments. The Board rejected this argument, correctly we all agree at least to the extent Yukon ·wanted to be considered a state. So what was left of Yukon's reliance on the Self-Determination Act in its case before the Board? There are two possibilities— nothing or nothing comprehensible. In either event, the Board had no duty to respond.

My colleagues think that perhaps Yukon also wanted to be considered the United States for the purpose of § 2(2). (The section provides in relevant part that the term employer "shall not include the United States or any wholly owned Government corporation." 29 U.S.C. § 152(2).) Yukon's briefs in this court hint here and there that it might have had this in mind, although the thrust of its presentation to this court and the Board was the rather inconsistent assertion that it—Yukon—was a separate, independent sovereign. *See, e.g.,* Brief of Petitioner at 36 (characterizing relationship under Self-Determination Act as "inter-governmental delegation, transferring responsibility from one sovereign to another"); Employer's Brief on Review of Jurisdictional Determination (No. 19–RC–13271) at 5 ("[a]ccess to the benefits of the Act is only available to sovereigns"); *id.* ("by definition under the Act, only sovereigns may compact as an exercise of their sovereignty").

At all events, the Board said enough on this subject, given the incoherence of Yukon's position. The Board wrote: "Significantly, the Employer was not brought into existence by a special legislative Act. Rather, it is a regional nonprofit corporation formed ... under applicable Alaska laws. Under these circumstances, we find that the Employer is not exempt under Section 2(2) 'as an integral part of the government· of the United States as a whole.' " Decision and Order, *Yukon Kuskokwim Health Corp.,* 328 N.L.R.B. No. 101 at 4, 1999 WL 419507 (June 18, 1999). In other words, whatever the Self-Determination Act means, or whatever Yukon

thinks it means, Yukon remains an independent Alaska corporation, not a part of the government of the United States. If Yukon believes the Act provides otherwise, it has yet to explain why.