**NATIONAL LABOR RELATIONS BOARD, Petitioner–Appellee,**

**and**

**Teamsters Local 228, Intervenor– Appellant,**

**v.**

**CHAPA DE INDIAN HEALTH PRO- GRAM, INC.; Carol Ervin, Susan Thorne, Respondents–Appellees.**

tute outrageous conduct, we need not reach

**National Labor Relations Board, Petitioner–Appellee,**

**and**

**Teamsters Local 228, Intervenor– Appellant,**

**v.**

**Chapa De Indian Health Program, Inc.; Carol Ervin, Susan Thorne, Respondents–Appellants.**

**Nos. 02–15576, 02–15610.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 2002.

Filed Jan. 16, 2003.

the issue of whether they might be protected.

David A. Rosenfeld, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, CA, for the intervenor-appellant.

Margery E. Lieber and Jennifer R. Taylor, National Labor Relations Board, Washington, D.C., for the petitioner-appellee.

Mark E. Merin, Dickstein & Merin, Sacramento, CA, for the respondents-appellees-cross-appellants.

Before RYMER, THOMAS, and SILVERMAN, Circuit Judges.

RYMER, Circuit Judge.

Chapa–De Indian Health Program, Inc. (Chapa–De) appeals the district court's order enforcing National Labor Relations Board (NLRB) subpoenas. Chapa–De challenged the NLRB's jurisdiction, but the district court held that jurisdiction was

not "plainly lacking." We agree, and affirm.

Teamsters Local 228 (Teamsters), which sought, but was denied, leave to intervene in the district court solely to support the NLRB's position that its subpoenas should be enforced, also appeals. Given that we uphold enforcement of the subpoenas, its appeal is moot.

## I

Chapa–De is a "tribal organization" under the Indian Self–Determination Act (ISDA). 25 U.S.C. § 450b(*l*). It is authorized under a sanctioning resolution made by the Rumsey Indian Rancheria, a federally recognized tribe, to contract with Indian Health Services (IHS) on behalf of the Rumsey Tribe to provide free health services to qualifying Native Americans in a four-county area in Northern California. Chapa–De is controlled by a board of directors, none of whom is a member of the Rumsey Tribe. There are Rumsey Tribe members on its Health Advisory Committee. Chapa–De operates four facilities, all located off tribal land. Approximately 40% of the patients it serves are non-Native American, and 55% of Chapa–De's non-professional staff members are non-Native American. In addition to the federal money it receives from IHS pursuant to the ISDA, Chapa–De receives payment for its services through MediCal and from private insurers.

On October 6, 2000, the Teamsters petitioned the NLRB for certification to represent Chapa–De's Auburn and Grass Valley medical support staff. Chapa–De asserted that the NLRB lacked jurisdiction because Chapa–De has sovereign immunity and because Chapa–De is an extension of the United States government as an ISDA contractor. Meanwhile, the Teamsters filed unfair labor practice charges against Chapa–De with the Board. On August 31, 2001, the NLRB issued a consolidated administrative unfair labor practice complaint based on the union's charges, which Chapa–De answered by raising a number of defenses, including the Board's lack of jurisdiction. Chapa–De asked the Board to sever and decide the jurisdictional issue prior to considering the merits of the complaint. The ALJ denied Chapa–De's motion.

The NLRB issued a subpoena duces tecum to Chapa–De, a subpoena ad testificandum to Carol Ervin, Chapa–De's Chief Executive Director, and a subpoena ad testificandum to Susan Thorne, a member of Chapa–De's management staff. At the Teamsters' request, the Board also issued a subpoena duces tecum to Chapa–De. Chapa–De filed a petition with the ALJ to revoke the subpoenas on the ground that the NLRB lacked jurisdiction. The ALJ concluded that the Board's assertion of jurisdiction was proper pursuant to *Yukon–Kuskokwim Health Corp.*, 328 N.L.R.B. No. 101, 1999 WL 419507 (1999), and *Sac & Fox Industries, Ltd.*, 307 N.L.R.B. 241, 1992 WL 90688 (1992).

When Chapa–De, Ervin, and Thorne refused to comply with the subpoenas, the NLRB sought enforcement in the district court pursuant to 29 U.S.C. § 161(2). The Teamsters sought, but were denied, leave to intervene. The court held that the Board's jurisdiction was not plainly lacking, and ordered the subpoenas enforced.

Chapa–De and the Teamsters timely appealed.

## II

▮ Both parties agree that the standard that applies at the enforcement stage is whether the NLRB "plainly lacks" jurisdiction. *EEOC v. Karuk Tribe Housing Auth.*, 260 F.3d 1071 (9th Cir.2001). As we noted in *Karuk Tribe,*

[j]udicial intervention prior to an agency's initial determination of its jurisdiction is appropriate only where: (1) there is clear evidence that exhaustion of administrative remedies will result in irreparable injury; (2) the agency's jurisdiction is plainly lacking; and (3) the agency's special expertise will be of no help on the question of its jurisdiction. *Id.* at 1077 (quoting *Marshall v. Burlington N., Inc.*, 595 F.2d 511, 513 (9th Cir. 1979)).[1] There can be no serious dispute that the irreparable injury and lack of expertise prongs are met, *Karuk Tribe*, 260 F.3d at 1077, therefore we turn to the jurisdictional issue.

### III

■ Chapa–De contends that the National Labor Relations Act, 29 U.S.C. §§ 151–169 (NLRA), is not a statute of general applicability and does not apply to Indian tribes because the NLRA has exemptions. But exemptions alone are not dispositive. The issue is whether the statute is generally applicable, not whether it is universally applicable. We have previously held that other federal statutes that contain exemptions are nevertheless generally applicable. *See, e.g., Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1115 (9th Cir.1985) (the Occupational Safety and Health Act (OSHA)); *Lumber Indus. Pension Fund v. Warm Springs Forest Prods. Indus.*, 939 F.2d 683, 685 (9th Cir.1991) (the Employee Retirement Income Security Act (ERISA)); *United States v. Baker*, 63 F.3d 1478, 1484–85 (9th Cir.1995) (the Contraband Cigarette Trafficking Act (CCTA)). Regardless, Chapa–De argues that we should follow the Tenth

Circuit's decision in *NLRB v. Pueblo of San Juan*, 276 F.3d 1186 (10th Cir.2002), which held that the NLRA did not preempt tribal governments from enacting a right-to-work ordinance. However, *Pueblo of San Juan* is not persuasive because the court there expressly noted that the "general applicability of federal labor law is not at issue." *Id.* at 1191. In any event, the NLRA is not materially different from the statutes that we have already found to be generally applicable. Its exemptions are relatively limited (Chapa–De points only to the fact that the NLRA exempts public sector employers and has been construed not to apply to church-controlled and operated schools),[2] and it is clear that the statute's reach was intended to be broad. *NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963) ("Congress intended to and did vest in the Board the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause."). We conclude that just as OSHA, ERISA and CCTA are statutes of general applicability, so too is the NLRA.

Even if the NLRA is a statute of general application, Chapa–De argues that it still would not apply to Indian tribes or to their tribal organizations because the statute does not expressly state that it does. However, the Supreme Court held in *Federal Power Commission v. Tuscarora Indian Nation*, 362 U.S. 99, 120, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960), that "general Acts of Congress apply to Indians … in the absence of a clear expression to the contrary." Chapa–De dismisses this as dicta, but we have explicitly adhered to the

---

1. The NLRB submits that *Karuk Tribe* conflicts with *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 508–09, 63 S.Ct. 339, 87 L.Ed. 424 (1943), *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 47–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938), and *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 209–12,

66 S.Ct. 494, 90 L.Ed. 614 (1946), but recognizes that this panel is bound by it.

2. *See NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979).

*Tuscarora* rule in *Coeur d'Alene,* 751 F.2d at 1115, and *Karuk Tribe,* 260 F.3d at 1078, although we recognize exceptions to it. Chapa–De also relies on special canons of construction, which require that statutes be construed for the benefit of Indian interests, in support of its position that even a statute that is generally applicable does not apply to Indian tribes when the statute is silent on the subject. This reliance is misplaced for the same reason. To accept Chapa–De's position would be effectively to overrule *Coeur d'Alene,* which, of course, this panel cannot do. *See Hart v. Massanari,* 266 F.3d 1155, 1171–72 (9th Cir.2001) (issue resolved by panel is binding unless overruled by en banc court or Supreme Court).

Under *Coeur d'Alene,* a statute that is silent with respect to its applicability to Indian tribes applies to Indian tribes unless

> (1) the law touches "exclusive rights of self-governance in purely intramural matters"; (2) the application of the law to the tribe would "abrogate rights guaranteed by Indian treaties"; or (3) there is proof "by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations...." In any of these three situations, Congress must *expressly* apply a statute to Indians before we will hold that it reaches them.

*Coeur d'Alene,* 751 F.2d at 1116 (quoting *United States v. Farris,* 624 F.2d 890, 893–94 (9th Cir.1980)). As the NLRA is silent, *Coeur d'Alene* controls. Even so, Chapa–De argues that the statute does not apply to *it* under both the first and third *Coeur d'Alene* exceptions.

### A

■ Chapa–De maintains that meeting the health care needs of tribal members is purely intramural, as the issue is of great concern and requires the exercise of the informed discretion of the tribe's govern-ing body. It argues that the governing body of the Rumsey Rancheria chose to designate Chapa–De as the tribal organization entitled to receive IHS funds in lieu of those services being provided directly by IHS. In Chapa–De's view, how health care services are provided is at least as intramural as the employment practices that we held were purely intramural in *Karuk Tribe.* Further, Chapa–De submits, it should not matter that non-Indians as well as Indians are served; rather, the important thing is how the organization is controlled and what its purposes are. As to these issues, Chapa–De maintains that it is governed by a board which the ISDA requires to be composed wholly of tribal Indians, and that it is funded solely by virtue of the sponsoring resolution of the Rumsey Indian Rancheria for the purpose of providing health care to its members. Finally, it suggests that to hold otherwise, just because non-Indians voluntarily use the health project's services, would jeopardize the Rumsey Rancheria's ability to assure access to free healthcare for tribal members.

We have considered *Coeur d'Alene*'s first exception in several cases, finding it sufficient in one instance but not in others. In *Coeur d'Alene* itself, we held that the operation of a tribal farm, which was a commercial enterprise wholly owned and operated by the tribe, and which sold grain and lentils on the open market and employed non-Indians as well as Indians, was not an aspect of tribal self-government and thus not purely intramural. We rejected an argument that tribal self-government embraces all tribal business and commercial activity. Instead, we held that "the tribal self-government exception is designed to except purely intramural matters such as conditions of tribal membership, inheritance rules, and ·domestic relations from the general rule that otherwise applicable federal statutes apply to Indian

tribes." *Coeur d'Alene*, 751 F.2d at 1116. Applying this restriction in *U.S. Department of Labor v. Occupational Safety & Health Review Commission*, 935 F.2d 182 (9th Cir.1991), we again held that OSHA regulations would not interfere with rights of self-government where the tribe ran a timber mill on a reservation, where about half of the mill's employees were non-Indian, and where most of the mill's revenue came from sales to non-Native Americans. Likewise, in *Lumber Industry Pension Fund*, we upheld application of ERISA to compel contributions by a tribal sawmill to a pension fund in the face of a tribal ordinance mandating that the mill transfer its tribal-member employees' contributions to a tribal pension plan. As we stated there, "[t]he self-government exception applies only where the tribe's decision-making power is usurped." *Lumber Indus. Pension Fund*, 939 F.2d at 685. By contrast, in *Karuk Tribe*, we held that applying the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (ADEA), to an employment relationship with the Karuk Tribe's housing authority did touch on purely internal matters related to the Tribe's self-governance. *Karuk Tribe* involved governance because the housing authority, which owned 100 low-income housing units on tribal land, was organized through a tribal ordinance and received funding under the Native American Housing Assistance and Self–Determination Act. The dispute was intramural because it was between a member of the Tribe and the tribal government, and did "not concern non-Karuks or non-Indians as employers, employees, customers, or anything else." *Karuk Tribe*, 260 F.3d at 1081.

Here, Chapa–De is not a tribe. While it contracts with IHS for the delivery of health services by virtue of a Rumsey sanctioning resolution, its funding comes from MediCal and third-party insurers as well as from IHS under the ISDA. Accordingly, even though the Rumsey Tribe may be able to revoke its sanctioning resolution and thereby terminate Chapa–De's ISDA funding, Chapa–De would still have resources available to operate. To this extent its viability is independent of the Rumsey Tribe. Also unlike the housing authority in *Karuk Tribe*, Chapa–De is a non-profit California corporation that operates outpatient health care facilities on non-Indian land. Nearly half of its patients are non-Native American. At least half of its non-professional employees— those involved in this controversy—are non-Indian as well. This cuts against Chapa–De's claim that its activities touch rights of self-governance on a purely intramural matter. *See Karuk Tribe*, 260 F.3d at 1081 (noting that the employment of non-Native Americans weighs heavily against a claim made under the first *Coeur d'Alene* exception); *Coeur d'Alene*, 751 F.2d at 1114 (noting that the farm at issue employed some non-Indians); *U.S. Dep't of Labor*, 935 F.2d at 183 (noting that about half of the mill's employees were non-Native Americans). Further, neither Chapa–De's chief executive officer, nor any of its board members, is a Rumsey Indian Rancheria member. Thus, unlike *Karuk Tribe*, the controversy does not concern a relationship between the Rumsey tribe and its members. Finally, while Chapa–De argues that providing for the *health* needs of its members is an intramural activity related to self-governance, it does not argue that its *labor relations* are.

In these circumstances, applying the NLRA does not clearly appear to touch on purely intramural matters that affect the right to self-governance.

### B

 For *Coeur d'Alene's* third exception to insulate a tribe from a statute of general applicability, there must be proof that

"Congress intended [the statute] not to apply to Indians on their reservations." *Coeur d'Alene*, 751 F.2d at 1116 (internal quotation marks omitted). Chapa–De offers two reasons why the NLRA does not apply: *first*, that it is not an "employer" under § 2(2) of the NLRA because, having been organized under the ISDA for the purpose of providing health services to Indians in lieu of IHS, it is the functional equivalent of the federal government;[3] and *second*, that the NLRB's exercise of jurisdiction over it would contravene the ISDA's goal of increasing tribal self-governance. Jurisdiction is not plainly lacking for either reason.

Indian tribes are not expressly exempted from the scope of the NLRA's definition of "employer," although as Chapa–De points out, they are excepted from the coverage of other statutes such as Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e(b). There is no pertinent legislative history in the NLRA or ISDA to shed light on the issue.[4] This being so, Chapa–De argues that it comes within the § 2(2) exemption because it administers federal public health programs on behalf of the United States, enjoys federal privileges that are peculiar to the government,[5] and carries out government functions that

would otherwise be performed by federal employees. However, it points to nothing in these acts which indicates that Congress intended the NLRA not to apply to Indian tribes, or to Chapa–De's activities.

Chapa–De relies upon the D.C. Circuit's decision in *Yukon–Kuskokwim Health Corp. v. NLRB*, 234 F.3d 714 (D.C.Cir. 2000), in support of its contention that it falls within § 2(2)'s federal government exception. In *Yukon–Kuskokwim*, the NLRB asserted jurisdiction over a hospital located off of reservation land and operated by a non-profit organization controlled by Alaska Native tribes and organized under ISDA. *Yukon–Kuskokwim Health Corp.*, 328 N.L.R.B. No. 101, 1999 WL 419507 (1999). On appeal, the court rejected the hospital's contention that it was exempt from the NLRA under the "state or political subdivision" prong of § 2(2), but remanded to the NLRB for further consideration of whether the hospital fell within § 2(2)'s separate "federal government" prong because the ISDA authorizes it to act as an arm of the United States. While *Yukon–Kuskokwim* may offer encouragement to Chapa–De about its prospects for success before the Board on its claim to a § 2(2) exemption as a federal surrogate or on the basis of federal Indian

---

3. Section 2(2) provides, in part, that "[t]he term 'employer' ... shall not include the United States or any wholly owned Government corporation ...." 29 U.S.C. § 152(2).

4. It is of some note, however, that one of the bills before Congress when it was considering amendments to the ISDA in 2000 would have provided that "[f]or purposes of section 2(2) ... an Indian tribe carrying out a self-determination contract ... under [the ISDA] shall not be considered an employer." S. REP. No. 106–221, at 57 (1999); H.R. REP. No. 106–477, at 13 (1999). This bill was not enacted. It is also the case that Congress indicated in the "Tribal Self–Governance Amendments of 2000," Pub.L. 106–260, 114 Stat. 711, § 2(6)(A) (2000), that ISDA is "an appropriate and effective means of imple-

menting the Federal policy of government-to-government relations with Indian tribes."

5. The privileges to which it refers include 25 U.S.C. §§ 450j(f), (k-l) (ISDA contractors permitted to use or acquire federal surplus property and are deemed executive agencies for purposes of procurement); 5 U.S.C. §§ 3371, 3372, and 25 U.S.C. § 450i(e) (federal rights and benefits extended to federal employee working for tribal organization if employee and organization so elect); 25 U.S.C. § 450f(d) (Federal Tort Claims Act coverage extended to ISDA contractors); and 25 U.S.C. § 450l (requiring federal government to contract with ISDA contractors for use of federal vehicles and screener identification cards for acquiring property upon request).

policy articulated in the ISDA, it does not show that Board jurisdiction is *plainly lacking.* The issue is an open one, and nothing in the D.C. Circuit's opinion evidences congressional intent that the statute not apply to Indians for purposes of *Coeur d'Alene*'s third exception.

It follows that we cannot say that jurisdiction is plainly lacking whether or not Chapa–De's clinics are on or off the reservation, as Chapa–De urges us to do. Chapa–De points to *Pink v. Modoc Indian Health Project, Inc.,* 157 F.3d 1185 (9th Cir.1998), and *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.,* 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998), but nothing said in either opinion suggests that the issue has been clearly resolved in the context of the NLRA or its exemption for the United States. *Pink* concerned application of Title VII to an off-reservation entity, but Title VII, unlike the NLR.'., expressly excludes Indian tribes from its coverage. 42 U.S.C. § 2000e(b). *Kiowa Tribe* involved the question of sovereign immunity, which is different from whether a statute applies.

 We conclude that jurisdiction is not plainly lacking. Accordingly, there is no basis for refusing to enforce the subpoenas. Having concluded this, however, we emphasize the limited nature of our decision. It is purely preliminary. We are in no way resolving the issue of the Board's jurisdiction; we merely are holding that judicial intervention prior to the NLRB's own determination of its jurisdiction is inappropriate at this stage.

## IV

Teamsters Local 228 argues that the district court incorrectly denied intervention on the ground that Chapa–De possesses tribal sovereignty. It sought to intervene in order to support enforcement of the subpoena which it served on Chapa–De. However, the union agrees that its position parallels that of the Board at this juncture. As we uphold enforcement, there is no need to reach the merits of the Teamsters' appeal. Therefore, it is dismissed as moot.

AFFIRMED AS TO CHAPA–DE (02–15610); DISMISSED AS TO TEAMSTERS LOCAL 228 (02–15576).